UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
               :

BELLA SHAPNIK, as proposed Administratrix and :
Administrator ad Prosequendum of the ESTATE OF :
ROSA SHAPNIK, deceased, and BELLA SHAPNIK, :
individually, YAKOV SHAPNIK, individually, :
               :
       Plaintiffs,    :
               :
    -v-       :
               :
THE HEBREW HOME FOR THE AGED AT :
RIVERDALE, et al.,      :
               :
       Defendants.  :
               :
---------------------------------------------------------------------X

20-cv-6774 (LJL)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__4/26/2021__

LEWIS J. LIMAN, United States District Judge:

 Two related matters are before the Court with respect to this action removed from state court.  First, Defendants move, pursuant to Federal Rule of Civil Procedure 56 for summary judgment with respect to all of Plaintiffs' claims.  Second, the Court *sua sponte* raised the question of whether federal jurisdiction exists such that the case was properly removed from state court.  Because the Court concludes that federal jurisdiction is lacking, it will remand the case to state court.  The motion for summary judgment therefore is denied as moot.

## BACKGROUND

### A. Allegations of the Complaint

 Plaintiff Bella Shapnik is the appointed administratix and administrator ad prosequendum of the Estate of Rosa Shapnik.  Dkt. No. 1-1 ("Complaint" or "Compl.") ¶ 1.  She is also the daughter-in-law of decedent Rosa Shapnik.  *Id.* ¶ 2.  Plaintiff Yakov Shapnik is the son of decedent Rosa Shapnik.  *Id.*  Defendants include the Hebrew Home for the Aged at Riverdale

("Hebrew Home"),[1] six medical doctors who were employees, agents and/or servants of the Hebrew Home,[2] ten registered nurses who were employees, agents, and/or servants of the Hebrew Home,[3] and several other named individuals who were employees, agents, and/or servants of the Hebrew Home.[4]  The Hebrew Home is a residential health care facility located in Riverdale, New York.

Rosa Shapnik became a resident of Hebrew Home in 2012 due to her Alzheimer's disease and dementia.  *Id.* ¶ 14.  On or about December 31, 2017, she suffered a fall resulting in contusions to her face, legs, and head but did not receive any medical treatment by Defendants until her family complained about her injuries.  *Id.* ¶¶ 17-18.  On numerous occasions, she was left lying in her bed and diapers covered in urine and feces, which covered her clothes and body; when her family brought her several new items of clothing, the staff at Hebrew Home threw away all of her clothes so as to hide the fact that they were covered in urine and feces.  *Id.* ¶¶ 19-20.

On or about May 8, 2018, Rosa Shapnik suffered bruising to her right hip.  *Id.* ¶ 22.  On August 20, 2018, she suffered from a fall and sustained left hip injuries and bruising.  *Id.* ¶ 23.

---

[1] The Complaint also names as part of Hebrew Home: The Hebrew Home at Riverdale by Riverspring Health, Riverspring Health, Riverspring Health Senior Living, Inc., Riverspring Health Holding Corp., as well as ABC Corporations 1-10.  Compl. ¶ 4.  The Complaint does not identify the differences among the corporate defendants.

[2] The Complaint names the following doctors as defendants:  Rebecca Magbag, M.D., Diya Detty Varghese, M.D., Daniel Sussman, M.D., Howard Rosas, M.D., Maria Wurpel, M.D., and Yelena Pertsovsky, M.D.  Compl. ¶ 7.

[3] The Complaint names the following registered nurses as defendants:  Kenisha Rose, LPN, Joy Lyare, LPN, Ernest Hodo, LPN, Joseph Dahomin, LPN, Adebisi Abikoye, LPN, Thresiamma Alex, LPN, Jannat Abdallah, LPN, Mariamma Mathew, LPN, Tania Harvey, LPN, and Edward Sackie, LPN.  Compl. ¶ 8.  The same individuals are also named as licensed nurse practitioners.  *Id.* ¶ 9.

[4] These are Farrah Reyes, Else Mengistu, Malica Sutherland, Marshalee Graham, and Jheanell Williams.  Compl. ¶ 11.  In addition, the Complaint names John Does 1-10, Nurse Noes 1-10, LPN Loes 1-10, Aids 1-10, and Doctor Does 1-10.  *Id.* ¶¶ 6, 9, 10.

On April 24, 2019, she suffered from a fall and sustained bilateral knee injuries but did not receive any medical treatment until her family complained to the staff.  *Id.* ¶¶ 24-25.  On or about March 30, 2020, Rosa Shapnik's family was advised by Defendants that she was in good health.  That advice was allegedly false.  *Id.* ¶ 26.  By no later than the following day, on or prior to April 1, 2020, Rosa Shapnik was suffering from bilateral pneumonia but was not sent to the hospital.  *Id.* ¶ 27.

From April 1, 2020 to April 5, 2020, her family insisted that she be sent to the hospital for treatment for her pneumonia and for a COVID-19 test, but Defendants refused to provide treatment for her and refused to give her a test for COVID-19.  *Id.* ¶¶ 28-29.  On or about April 5, 2020, Rosa Shapnik was sent to the hospital for treatment after she was found to be unresponsive.  *Id.* ¶ 30.  At the time, she suffered from severe dehydration, pneumonia, and COVID-19.  *Id.* ¶ 31.  She passed away on or about April 11, 2020, from her untreated physical illness.  *Id.* ¶ 32.

### B.    The PREP Act

Rosa Shapnik requested and was denied a test for COVID-19.  She ultimately died after being diagnosed with COVID-19.  A congressional statute, the Public Readiness and Emergency Preparedness Act ("PREP Act") is relevant to at least that portion of her claims.

The PREP Act was enacted in 2005 in response to a different coronavirus epidemic, the SARS epidemic of 2003.[5]  In order to encourage the use of products, drugs, and devices designed to address epidemics and pandemics and that are approved by the Federal Drug Administration ("FDA"), the PREP Act gives the Secretary of Health and Human Services ("HHS Secretary")

---

[5] SARS stands for "severe acute respiratory syndrome" and is a viral respiratory illness caused by a coronavirus.  It spread to more than two dozen countries across North America, South America, Europe, and Asia before it was contained.  *See* Centers for Disease Control and Prevention, *Severe Acute Respiratory Syndrome (SARS)*, https://www.cdc.gov/sars/index.html.

authority to make declarations that have the effect of conferring immunity on certain persons from federal and state liability.  Section 247d-6d(a)(1) is at the heart of the PREP Act.  It generally provides:

> [A] covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration [by the Secretary of Health and Human Services ("HHS Secretary")] has been issued with respect to such countermeasure.

42 U.S.C. § 247d-6d(a)(1).

The Act applies to "any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing or use of such countermeasure."  *Id.* § 247d-6d(a)(2)(B).  Loss includes death, injury, and fear of injury, medical monitoring, and property damage and business interruption loss.

A "covered countermeasure" under the PREP Act is defined as "a qualified pandemic or epidemic product"; "a security countermeasure"; a "drug . . ., biological product . . ., or device . . . that is authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food Drug, and Cosmetic Act [i.e., ('FFDCA')]"; or "a respiratory protective device that is approved by the National Institute for Occupational Safety and Health [i.e. ('NIOSH')], . . . and that the Secretary determines to be a priority for use during a public health emergency declared under section 247d of this title."  *Id.* § 247d-6d(i)(1).  The PREP Act creates a rebuttable presumption that any use of a countermeasure by a covered person during the declaration period is for the category of diseases covered under the declaration.  *Id.* § 247d-6d(a)(6).  A "covered person" includes manufacturers, distributors, program planners,

and qualified persons who prescribed, administered, or dispensed such countermeasures. *Id.* § 247d-6d(i)(2). In turn, a "qualified person" includes any licensed health professional or other person authorized to prescribe, administer, or dispense covered countermeasures, including hospitals, nursing homes and other entities. *Id.* § 247d-6d(i)(8). A "program planner" includes "persons" who supervise or administer a program with respect to the administration, provision, or use of a covered countermeasure, or who "provides a facility to administer or use a covered countermeasure in accordance with a declaration [from the HHS Secretary]." *Id.* § 247d-6d(i)(6).

The PREP Act does not explicitly define the term "administration" but assigns to the HHS Secretary the responsibility to provide relevant conditions in the declaration. *See id.* § 247d-6d(b)(1).

The immunity enjoyed by a covered person with respect to a covered countermeasure is subject to one limited exception. The sole exception to immunity applies if there is "death or serious physical injury proximately caused by willful misconduct," *id.* § 247d-6d(d)(1), in which case an action may "be filed and maintained only in the United States District Court for the District of Columbia," *id.* § 247d-6d(e)(1). There is an administrative exhaustion requirement before a plaintiff may bring a suit for injury proximately caused by willful misconduct. *Id.* § 247d-6e(d)(1).

A person who has a "covered injury" may bring a claim for compensation from the "Covered Countermeasure Process Fund" ("Process Fund"), which is administered by the HHS Secretary. *Id.* § 247d-6e(a). The objective of the Process Fund is to provide "timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure." *Id.* The request for such compensation and

the actions of the HHS Secretary in administering the Process Fund are not subject to judicial review: "No court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary" in administering the Process Fund.  *Id.* § 247d-6e(b)(5)(C).  A person who is injured as a result of willful misconduct may elect to accept compensation from the Process Fund in lieu of bringing a court action, if the HHS Secretary determines that the person qualifies.  *Id.* § 247d-6e(d)(5).  However, a person who seeks compensation through the Process Fund cannot also pursue relief through a civil action or proceeding; compensation through the Process Fund "shall be exclusive of any other civil action or proceeding for any claim or suit this section encompasses."  *Id.* § 247d-6e(d)(4).

The PREP Act contains a limited provision expressly preempting state laws that conflict with the terms of the PREP Act.  The provision states:

> During the effective period of a declaration [by the Secretary], or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—
>
> (A) is different from, or is in conflict with, any requirement applicable under this section; and
>
> (B) relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing, use, any other aspect of safety or efficacy, or the prescribing, dispensing, or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section or any other provision of this chapter, or under the [FDCA].

*Id.* § 247d-6d(b)(8).

C.      **The HHS Secretary's PREP Act Declarations in Response to the COVID-19 Pandemic**

The PREP Act is directly relevant to certain claims of injury suffered as a result of COVID-19 or at the hands of certain persons involved in administering covered countermeasures in response to the COVID-19 pandemic.

On March 10, 2020, the HHS Secretary issued a declaration under the PREP Act, published on March 17, 2020 and retroactively effective February 4, 2020, regarding the COVID-19 pandemic ("March 17, 2020 Declaration").  *See* March 17, 2020 Declaration, 85 Fed. Reg. at 15,198.  The March 17, 2020 Declaration contained the HHS Secretary's determination that COVID-19 "constitutes a public health emergency" and his recommendation of "the manufacture, testing, development, distribution, administration, and use of the Covered Countermeasures."  *Id.* at 15,201.  The March 17, 2020 Declaration also contained the HHS Secretary's declaration that "[l]iability immunity as prescribed in the PREP Act and conditions stated in this Declaration is in effect for the Recommended Activities," *id.*, and "Recommended Activities" are defined as "the manufacture, testing, development, distribution, administration, and use of the Covered Countermeasures," *id.* at 15,198-99.  Under the March 17, 2020 Declaration, liability immunity is afforded only for Recommended Activities involving covered countermeasures that are related to "federal agreements" or "activities authorized in accordance with the public health and medical response of the Authority Having Jurisdiction to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures following a Declaration of an emergency."  *Id.* at 15,202.

Each of those terms is defined broadly under the statute and the March 17, 2020 Declaration.  The covered countermeasures include "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or

mitigate COVID-19" that the Food and Drug Administration ("FDA") has approved, cleared, licensed, or authorized for emergency or investigational use.  *Id.*  Unlike in the PREP Act, which does not define administration, the March 17, 2020 Declaration defines "Administration of a Covered Countermeasure" to mean "physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for purposes of distributing and dispensing countermeasures."  *Id.* at 15,200.  A "qualified person" is defined by the March 17, 2020 Declaration to include not just those persons identified in the PREP Act but also "(a) any person authorized in accordance with the public health and medical emergency response of the Authority Having Jurisdiction[6] . . . to prescribe, administer, deliver distribute or dispense the Covered Countermeasures, and their officials, agents, employees, contractors and volunteers, following a Declaration of Emergency."  *Id.* at 15,201-02.

Notably, the term "Program Planner," which is a statutory term from the PREP Act, includes any person who performs certain functions, including "supervis[ing] or administer[ing] a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product" and who does so "in accordance with a declaration" by the HHS Secretary.  42 U.S.C. § 247d-6d(i)(6).  The March 17, 2020 Declaration's preamble states that a program planner can include a "private sector

---

[6] Authority Having Jurisdiction is defined as "the public agency or its delegate that has legal responsibility and authority for responding to an incident, based on political or geographical (e.g., city, county, tribal, state, or federal boundary lines) or functional (e.g., law enforcement, public health) range or sphere of authority."  March 17, 2020 Declaration, 85 Fed. Reg. at 15,202.

employer or community group" that "carries out the described activities."  March 17, 2020

Declaration, 85 Fed. Reg. at 15,199.

The liability immunity in the March 17, 2020 Declaration is effective through the final

day of the emergency declaration or October 1, 2024, whichever occurs first.  *Id.* at 15,202.  The

preamble to the March 17, 2020 Declaration contains the interpretation by the HHS Secretary

that the scope of immunity is broad:

> Claims for which Covered Persons are provided immunity under the Act are losses
> caused by, arising out of, relating to or resulting from the administration or use
> by an individual of a Covered Countermeasure consistent with the terms of the
> Declaration issued under the Act.  Under the definition [of Administration], these
> liability claims are precluded if they allege an injury caused by a countermeasure,
> or if the claims are due to manufacture, delivery, distribution, dispensing, *or
> management and operation of countermeasure programs at distribution or
> dispensing sites.*

*Id.* at 15,200 (emphasis added).  Thus, it is the HHS Secretary's interpretation that, when a

declaration is in effect, the PREP Act precluded, for example, liability claims alleging negligence

by a manufacturer in creating a vaccine, or negligence by a health care provider in prescribing

the wrong dose, absent willful misconduct.  "*Likewise, the Act precludes a liability claim

relating to the management and operation of a countermeasure distribution program or site,

such as a slip-and-fall injury or vehicle collision by a recipient receiving a countermeasure at a

retail store serving as an administration or dispensing location that alleges, for example, lax

security or chaotic crowd control*."  *Id.* (emphasis added).

The declaration has since been amended five times, including to expand the definition of

covered countermeasure.[7]  Among other things, the Fourth Amended Declaration makes

---

[7] *See* Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act
for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 21,012-02 (Apr. 15, 2020)
("First Amended Declaration"); Second Amendment to Declaration Under the Public Readiness
and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed.
Reg. 35,100-01 (June 8, 2020) ("Second Amended Declaration"); Third Amendment to

"explicit that there can be situations where not administering a covered countermeasure to a particular individual can fall within the PREP Act and this [Fourth Amended] Declaration's liability protections."  Fourth Amended Declaration, 85 Fed. Reg. at 79,194.  Accordingly, "[w]here there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute 'relating to . . . the administration to . . . an individual' under [the PREP Act]" and thus confer immunity.  *Id.* at 79,197.

The Fourth Amended Declaration also contains the following broad language with respect to liability immunity and the appropriate federal-state balance:

> COVID-19 is a global challenge that requires a whole-of-nation response. There are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities. The world is facing an unprecedented pandemic. To effectively respond, there must be a more consistent pathway for Covered Persons to manufacture, distribute, administer or use Covered Countermeasures across the nation and the world. Thus, there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a uniform interpretation of the PREP Act. Under the PREP Act, the sole exception to the immunity from suit and liability of covered persons under the PREP Act is an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct by such covered person. In all other cases, an injured party's exclusive remedy is an administrative remedy under section 319F-4 of the PHS Act. Through the PREP Act, Congress delegated to me the authority to strike

---

Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 52,136-01 (Aug. 24, 2020) ("Third Amended Declaration"); Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 85 Fed. Reg. 79,190-01 (Dec. 9, 2020) ("Fourth Amended Declaration"); Fifth Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 7,872-02 (Feb. 2, 2021) ("Fifth Amended Declaration").

the appropriate Federal-state balance with respect to particular Covered Countermeasures through PREP Act declarations.

*Id.* at 79,197-98.[8]

On October 23, 2020, the Office of the General Counsel of HHS ("OGC") issued an advisory opinion on the HHS Secretary's PREP Act declarations ("October 23, 2020 Advisory"). The October 23, 2020 Advisory makes clear OGC's position that PREP Act immunity is broad: "It covers a broad range of entities when such entities take reasonable steps to follow public-health guidelines and directives in using covered medical products.  Such entities are not limited to healthcare professionals and healthcare companies that are part of a government response to the COVID-19 pandemic [but] may also include businesses, schools, and places of worship."  Dkt. No. 14-2 at 1.  Thus, "any individual or organization can potentially be a program planner and receive PREP Act coverage."  *Id.* at 3.  But to receive PREP Act immunity, the covered person must act in compliance with public-health guidance from the applicable Authority Having Jurisdiction.  *Id.* at 4.  A program planner that fails to follow applicable guidance does not have PREP Act immunity.  *Id.* at 6 (discussing example of grocery store that fails to follow guidance from a county regarding social distancing).  The October 23, 2020 Advisory concludes that it is "not a final agency action or a final order," "does not have the force or effect of law," and does not bind the federal courts.  *Id.* at 7.

---

[8] The PREP Act was amended on March 27, 2020, following the HHS Secretary's March 17, 2020 Declaration, to include as covered countermeasures certain types of personal protective equipment ("PPE"), including personal respiratory protective devices and face shields as "covered countermeasures."  Public Health Service Act, Pub. L. No. 116-136, sec. 319F-3(i)(1)(D), § 3103, 134 Stat. 281, 361 (Mar. 27, 2020) (codified as amended at 42 U.S.C. § 247d-6d(i)(1)(D)).  PPE includes devices that are approved by the NIOSH subject to various emergency use authorizations and that are used after January 27, 2020 until October 1, 2024.  42 U.S.C. § 247d-6d(i)(1)(D).

The Governor of the State of New York and the New York State Department of Health ("NYSDOH") are Authorities Having Jurisdiction under the March 17, 2020 Declaration.  On March 7, 2020, the Governor of the State of New York issued a declaration of emergency, which included directing "all state agencies to take appropriate action."  Executive Order No. 202. (Mar. 7, 2020).[9]  Executive Order No. 202 designated the NYSDOH as one such agency and specified that the New York Commissioner of Health was to promulgate emergency regulations. The same month, the NYSDOH issued guidance for nursing homes in regarding precautions and procedures for nursing homes to maintain health and safety.  *See* Dkt. No. 9-5.  It thus is not disputed that, under the PREP Act and various Declarations, nursing homes, such as the Hebrew Home constitute "person[s] authorized in accordance with the public health and medical emergency response of the Authority Having Jurisdiction . . . to prescribe, administer, deliver distribute or dispense the Covered Countermeasures, and their officials, agents, employees, contractors and volunteers, following a Declaration of Emergency."  March 17, 2020 Declaration, 85 Fed. Reg. at 15,201-02; *see* 42 U.S.C. § 247d-6d(i)(8).

## PROCEDURAL HISTORY

This action was initiated on June 30, 2020, by Plaintiffs Bella Shapnik, individually and as Rosa Shapnik's administratrix, and by Yakov Shapnik in the Supreme Court of the State of New York, Bronx County, by summons and a complaint.  Dkt. No. 1. The Complaint alleges four causes of action: medical malpractice violation of New York Public Health Law § 2803-c, negligent hiring, training, supervision, and retention, negligence individually and through respondeat superior, and wrongful death in violation of New York Estates, Powers and Trusts Law § 5-4.1.

---

[9] Executive Order No. 202, State of New York (Mar. 7, 2020), available at https://www.governor.ny.gov/sites/default/files/atoms/files/EO_202.pdf.

Defendant Hebrew Home and certain individual defendants were served with the summons and complaint on July 23, 2020, and they filed a notice of removal in this court on August 21, 2020 pursuant to 28 U.S.C. § 1441(a).  Dkt. No. 1.  The removal petition asserts that the Complaint arises under and is governed by federal law within the meaning of 28 U.S.C. § 1331 based on the PREP Act.  *Id.* ¶ 10.

On October 5, 2020, the appearing Defendants filed this motion for summary judgment. Dkt. No. 8.  Plaintiffs filed their opposition on November 3, 2020, Dkt No. 12, and Defendants filed their reply on November 18, 2020, Dkt. No. 14.  On March 23, 2021, the Court *sua sponte* raised the issue of federal jurisdiction and invited the parties to submit briefs addressing the Court's jurisdiction, Dkt. No. 18, which they did on April 1, 2021, Dkt. Nos. 19, 20.

## DISCUSSION

The Court first addresses whether the Court has subject matter jurisdiction over this matter.  Because it holds that federal jurisdiction is lacking, the Court need not address the motion for summary judgment.

### A.     Removal Jurisdiction

Section 1441 of Title 28 permits "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" to be removed to federal court except as otherwise provided by Congress.  28 U.S.C. § 1441(a).  Under that provision, except where diversity jurisdiction is present, federal question jurisdiction is required.  "The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  "A cause of action arises under federal law only when the plaintiff's 'well-pleaded complaint' raises an issue of federal law."  *New York v. Shinnecock Indian Nation*, 686 F.3d 133,

138 (2d Cir. 2012) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)).  "Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983).

A case may not be removed to federal court "on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the federal defense is the only question truly at issue in the case."  *Id.* at 14; *see Shinnecock Indian Nation*, 686 F.3d at 138 ("It is not enough that the complaint anticipates a potential federal defense."); *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998) ("Generally, a complaint that pleads only state law causes of action may not be removed to federal court even where Congress has chosen to regulate the entire field of law in the area in question.").  That rule gives force to the general proposition that "the plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  *Caterpillar*, 482 U.S. at 392.  It also gives recognition to the fact that under our system of federalism, state courts are presumed equally competent as federal courts to apply principles of preemption and are, under the Supremacy Clause of the United States Constitution, equally bound to do so.  *See id.* at 398 ("The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted . . . does not establish that they are removable to federal court.").

There is a limited "'independent corollary' to the well-pleaded complaint rule, known as the 'complete pre-emption' doctrine."  *Id.* at 393 (quoting *Franchise Tax Bd.*, 463 U.S. at 12).

The doctrine is distinguishable from other doctrines of preemption that apply either when federal legislation has "occupied the field" that the state would purport to regulate or where application of state law would conflict with federal law.  *See Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271-72 (2d Cir. 2005).  The consequence of such "defensive preemption" is that the state rule must give way to federal law.  *See id.* at 272; *see also Metro. Life*, 481 U.S. at 64; *Vaden v. Discover Bank*, 556 U.S. 49, 60-61 (2009); *Wurtz v. Rawlings Co., LLC,* 761 F.3d 232, 238 (2d Cir. 2014).

When the complete preemption doctrine applies, the state court is deprived of authority even to make the determination of whether state law can apply: "A defendant may properly remove a state-law claim when a federal statute 'wholly displaces the state-law cause of action,' such that the claim, 'even if pleaded in terms of state law, is in reality based on federal law.'" *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004)).  "The Supreme Court has only found three statutes to have the requisite extraordinary preemptive force to support complete preemption: § 301 of the Labor-Management Relations Act (LMRA), § 502(a) of the Employee Retirement Income Security Act (ERISA), and §§ 85 and 86 of the National Bank Act." *Sullivan*, 424 F.3d at 272 (internal citations omitted); *see Whitehurst v. 1199SEIU United Healthcare Workers East*, 928 F.3d 201, 206 (2d Cir. 2019) (same).

The Supreme Court first recognized the doctrine in *Avco Corp. v. Aero Lodge No. 735, Int'l Assoc. of Machinists and Aerospace Workers*, 390 U.S. 557 (1968).  It held that a labor dispute governed by Section 301 of the LMRA was removable to federal court, even when pleaded as a breach of contract claim for violation of a collective bargaining agreement, because "the substantive law to apply in suits under § 301 is federal law," *id.* at 559 (quoting *Textile*

*Workers Union of Am. v. Lincoln Mill of Ala.*, 353 U.S. 448, 456-57 (1957)), and "[a]n action arising under § 301 is controlled by federal substantive law even though it is brought in a state court," *id.* at 560. As the Supreme Court later described the *Avco* decision in *Franchise Tax Board*, "the preemptive force of § 301 [wa]s so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Franchise Tax Bd*, 463 U.S. at 23 (citation omitted).

"For 20 years," the only statute "singled out . . . for such special treatment" was "§ 301 of the LMRA." *Metro. Life*, 481 U.S. at 64. It was not until 1987 that another statute, Section 502(a)(1)(B) of ERISA, was found by the Supreme Court to have the "extraordinary" preemptive force necessary to make a claim pleaded in state court exclusively on state-law grounds removable to federal court on the basis of federal question jurisdiction. *Id.* at 65. In *Metropolitan Life*, the Supreme Court held that Section 502(a)(1)(B) had such force based entirely on the conclusion that "Congress ha[d] clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." *Id.* at 66. It would not have been sufficient that Section 502 had "unique preemptive force" because "[f]ederal pre-emption is ordinarily a federal defense to the plaintiff's suit . . . and, therefore, does not authorize removal to federal court." *Id.* at 63, 65. "But the language of the jurisdictional subsection of ERISA's civil enforcement provisions closely parallel[ed] that of § 301 of the LMRA" and the Supreme Court was required to "presume[e] that similar language in two labor statutes has a similar meaning." *Id.* at 65. That conclusion was reinforced by legislative history that set out Congress's "clear intention to make § 502(a)(1)(B) suits brought

by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA." *Id.* at 66.

Finally, in *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003), the Supreme Court held that Sections 85 and 86 of the National Bank Act completely preempted state law causes of action for usury against a national bank such that cases raising such claims would be removable to federal court. It reiterated that "a defense that relies on . . . the preemptive effect of a federal statute will not provide a basis for removal" and that "[a]s a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Id.* at 6. It held, however, that "a state claim may be removed to federal court" but only "when Congress expressly so provides . . . or when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Id.* at 8. Congress had "expressly so" provided that Sections 85 and 86 in the National Bank Act be the exclusive cause of action for usury claims against national banks because they were "comparable to the provisions" in *Avco* and *Metropolitan Life*, *id.* at 9, and because "the special nature of federally chartered national banks" made "[u]niform rules limiting the liability of national banks and prescribing exclusive remedies for their overcharges . . . an integral part of a banking system that needed protection from 'possible unfriendly State legislation,'" *id.* at 10-11 (quoting *Tiffany v. Nat'l Bank of Mos.*, 18 Wall. 409, 412 (1874)); *see also id.* at 11 (noting that "[i]n actions against national banks for usury, [Sections 85 and 86] supersede both the substantial and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive"). The Supreme Court concluded, "The same federal interest that protected national banks from the state taxation that Chief Justice Marshall characterized as the 'power to destroy,' *McCulloch v. Maryland*, 4 Wheat.

316, 431 (1819), supports the established interpretation of 85 and 86 that gives those provisions the requisite pre-emptive force to provide removal jurisdiction." *Id.* at 11.

Surveying the case law in *Sullivan*, the Second Circuit held that the appropriate test "to determine whether a federal statute completely preempts a state-law claim within its ambit [is] whether the federal statute provides 'the exclusive cause of action' for the asserted state-law claim." *Sullivan*, 424 F.3d at 275-76 (quoting *Beneficial Nat'l Bank*, 539 U.S. at 9). "If so, the asserted state-law claim 'is in reality based on federal law . . . [and] is then removable under 28 U.S.C. § 1441(b), which authorizes any claim that 'arises under federal law to be removed to federal court.'" *Id.* at 276 (quoting *Beneficial Nat'l Bank*, 539 U.S. at 8). The Second Circuit observed that "[m]any federal statutes—far more than support complete preemption—will support a defendant's argument that because federal law preempts state law, the defendant cannot be held liable under state law." *Id.* at 272-73. However, "[t]he complete-preemption doctrine [is] distinguished from ordinary preemption, also known as defensive preemption." *Id.* at 272. "[R]emoval of state-law claims based on complete preemption becomes possible not solely by virtue of the preemptive force of a substantive federal statute such as the LMRA, ERISA, or the National Bank Act, but rather because a federal statute with completely preemptive force also gives rise to original federal jurisdiction, and as a consequence allows removal under 28 U.S.C. § 1441." *Id.* at 276. "Put another way, '[o]nly state-court actions that *originally could have been filed in federal court* may be removed to federal court by the defendant.'" *Id.* (quoting *Caterpillar*, 482 U.S. at 392); *see also Franchise Tax Bd.*, 463 U.S. at 13 (holding that if plaintiff's causes of action filed in state court "come within the original jurisdiction of the federal courts, removal was proper").

The *Sullivan* court thus held that the Railway Labor Act ("RLA") did not preempt state law claims that came within its scope.  The RLA provides that "minor disputes" of the type at issue in *Sullivan* must be "heard in the first instance before arbitral panels, not courts, and state-law claims that are disguised minor disputes are therefore preempted by the RLA." *Sullivan*, 424 F.3d at 273.  The RLA, however, did not "completely preempt" such actions because of this primary jurisdiction, and thus they were not removable to federal court.  *Id.* at 276.  The Second Circuit highlighted the fatal internal inconsistency in the defendant's argument for removal of state law claims—that also qualified as minor disputes under the RLA—to federal court on complete preemption grounds: "[T]he district court must have jurisdiction for removal to be proper, but the court must then dismiss the removed case because only adjustment boards, not federal courts, have primary jurisdiction over claims arising under the RLA."  *Id.*  For complete preemption and removal jurisdiction to exist, a district court would have to be able to "adjudicate the claim on the merits under the relevant preemptive statute."  *Id.*

## B.    Complete Preemption by The PREP Act

Defendants argue that Congress completely preempted Plaintiffs' state-law causes of action and intended for them to be removable to federal court because the PREP Act "provides both a compensation fund and an exclusive federal forum for claims" to which the statute applies.  Dkt. No. 19 at 5 n.1.[10]  Specifically, they point to a provision that directs persons bringing claims for which the statute provides immunity to an alternative no-fault compensation program over which there is "federal agency control."  *Id.* at 3-4.  They also emphasize language in the PREP Act that, they argue, provides an "exclusive federal remedy" to a "plaintiff making a

---

[10] The "law that creates the cause of action" upon which Plaintiffs here sue is state law. *Franchise Tax Bd.*, 463 U.S. at 13; *see Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916).  Accordingly, federal jurisdiction lies only if the claims are completely preempted.

claim for damages due to willful misconduct by a covered person," *id.* at 3, by requiring that any

such action "shall be filed and maintained only in the United States District Court for the District

of Columbia," *id.* (quoting 42 U.S.C. § 247d-6d(e)(1)).  Second, Defendants argue that the Court

should defer to the HHS Secretary's interpretation of the PREP Act in the Fourth Amended

Declaration, which refers to the "substantial federal legal and policy interests . . . in having a

uniform interpretation of the PREP Act" and that "Congress delegated to [the HHS Secretary]

the authority to strike the appropriate Federal-state balance."  *Id.* at 8 (quoting Fourth Amended

Declaration, 85 Fed. Reg. at 79,194).  The Court does not find any of these arguments

persuasive.

 First, the argument that complete preemption exists because Congress created a federal

fund administered by a federal agency for claims against persons who enjoy immunity under a

federal statute is foreclosed by *Sullivan* as well as by the Supreme Court precedent discussed

herein.  Defendants argue both that the federal court should assert jurisdiction over Plaintiffs'

claims and, at the same time, that such jurisdiction is foreclosed—that Plaintiffs' sole remedy is

with the Process Fund or, if they can prove willfulness, in a different federal court.  It thus

presents the paradigmatic case over which the Second Circuit has held a federal court would not

have removal jurisdiction: where the plaintiff argues both that the district court has jurisdiction

that the removed case must be dismissed because another agency has primary jurisdiction over

the claims.  *See Sullivan*. 424 F.3d at 276.

 It is instructive to compare the language of the PREP Act with that of the Air

Transportation Safety and System Stabilization Act of 2001 ("ATSSSA") passed in the wake of

the terrorist attacks of September 11, 2001, and which the Second Circuit has held was drafted

by Congress to provide for complete preemption.  *See In re WTC Disaster Site*, 414 F.3d 352 (2d

Cir. 2005).  The ATSSSA had two components.  First, Section 405 of the ATSSSA created and set out detailed criteria for participation in a victim compensation fund to be administered by a special master according to federal guidelines.  An individual who elected to submit a claim to the fund waived the right to file a civil action in any federal or state court for damages related to the events of September 11.  *Id.* at 374.  Second, Section 408 of the ATSSSA created a "Federal cause of action for damages arising out of the hijacking and subsequent crashes" on September 11 and directed that "this cause of action shall be the exclusive remedy for damages arising out of the hijacking and subsequent crashes of such flights."  *Id.* at 373-74.  Section 408 also provided that the federal district court in the Southern District of New York "shall have original and exclusive jurisdiction over all actions brought for any claim . . . resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001."  *Id.* at 375.

Based on that language, the Second Circuit concluded (1) that "Congress intended ATSSSA to preempt at least the claims brought by the plaintiffs [alleging exposure after September 29, 2001 or at sites other than the World Trade Center]" and (2) "Congress intended that all suits asserting the ATSSSA-created cause of action be litigated only in that federal court."  *Id.*  In order "[t]o give effect to that intent where such an action has been commenced in state court," the Second Circuit found that the ATSSSA "must be interpreted as authorizing the removal of the action to the federal court."  *Id.*  It also recited comments from congresspersons, similar to those made in *Metropolitan Life*, which indicated that the "intent" of the legislation was "to put all civil suits" in federal court, specifically "in the Southern District."  *Id.* at 377 (quoting 147 Cong. Rec. S9592 (Sept. 21, 2001) (comments of Sen. Schumer)).  Through the ATSSSA, Congress "displace[d] . . . not the substantive standards governing liability [which remained governed by the applicable state law], but only the state-law damages remedies."  *Id.* at

380.  The Second Circuit concluded, "as to such remedies, Congress's intent to preempt is manifest."  *Id.*

The language of the PREP Act is far different than that of the statutes in *In re WTC Disaster Site* or *Avco*.  It does not create a federal cause of action for all, or even most, claims of damages arising out of the conduct of covered persons, and it does not provide for exclusive jurisdiction in federal court of such claims.  It also does not specifically call for the application of federal substantive law as Section 301 of the LMRA did in *Avco*.  *See* 42 U.S.C. § 247d-6d(e)(2) ("The substantive law for decision . . . shall be derived from the law, including choice of law principles, of the State in which the alleged willful misconduct occurred, unless such law is inconsistent with or preempted by Federal law.").

Instead, the PREP Act confers "immun[ity] from suit and liability under Federal and State law," *id.* § 247d-6d(d)(1), upon covered persons under certain circumstances, including administering a covered countermeasure like vaccines, respiratory protective devices, or other products that "limit the harm that COVID-19 . . . might otherwise cause," Second Amended Declaration, 85 Fed. Reg. at 35,102.  It is, "at its core, an immunity statute; it does not create rights, duties, or obligations."  *Dupervil v. Alliance Health Operations, LCC*, 2021 WL 355137, at *9 (E.D.N.Y. Feb. 2, 2021).  The PREP Act contains a limited preemption provision but that provision states only that laws that conflict with the terms of the PREP Act are preempted in much the language used by standard "defensive" preemption provisions.  *See* 42 U.S.C. § 247d-6d(b)(8).  There is nothing in the statute that reflects the congressional intent that the state courts would be denied the prerogative to determine, in the first instance and subject to review by the Supreme Court, whether the laws of their respective states conflict with federal

law and the right to decide—if they did conflict—whether it would be consistent with state legislative intent to more narrowly construe the law or to eliminate it entirely.[11]

The statute does create "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct," 42 U.S.C. § 247d-6d(d)(1), and it provides a procedure for such suits: "Any action under subsection (d) shall be filed and maintained only in the United States District Court for the District of Columbia," *id.* § 247d-6d(e)(1); *see also id.* § 247d-6d(e)(3), (4), (6) (requiring that complaints be pled with "particularity" and accompanied by a physician affidavit and certified medical records, and staying discovery until resolution of a motion to dismiss). "Willful misconduct" is defined by the PREP Act to "denote an act or omission that is taken (i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." *Id.* § 247d-6d(c)(1)(A).

---

[11] Defendants attempt to distinguish *Sullivan* on the grounds that the adjustment boards at issue were not federally controlled whereas the compensation fund at issue here is federally controlled. Dkt. No. 19 at 4-5; *see also id.* at 3-4. They rely on the district court opinion in *In re World Trade Center Disaster Site Litigation*, 270 F. Supp. 2d 357 (S.D.N.Y. 2003) for that distinction. Tellingly, however, although the compensation fund established by the ATSSSA was administered by a special master who was charged with making compensation awards according to criteria established generally by the ATSSSA and more specifically by regulations promulgated by the Department of Justice, neither the district court nor the Second Circuit on appeal attributed any significance to that fact. The Second Circuit held instead that complete preemption was justified *not* on the basis of the provision establishing the compensation fund, but rather on the broader provision establishing an exclusive cause of action that entirely displaced state court causes of action. *See In re WTC Disaster Site*, 414 F.3d at 373-74. The other cases upon which Defendants rely do not provide them further support. In *Owen v. Crop Hail Management*, 841 F. Supp. 297, 303-04 (W.D. Mo. 1994), the court held that the Federal Crop Insurance Act, 7 U.S.C. §§ 1501-1520, completely preempted a state law claim filed in state court for refusal to pay on an insurance policy but not because there was an administrative scheme that provided compensation. The third case, *C.E.R. 1988, Inc. v. Aetna Casualty & Surety Company*, 386 F.3d 263 (3d Cir. 2004), did not involve complete preemption.

Defendants do not put much weight on this provision, and for good reason.  It is best understood to create a rule that the federal cause of action created by the PREP Act can be brought only in federal court and only in the United States District Court for the District of Columbia, contrary to the usual rule that state courts have concurrent jurisdiction over federally-created causes of action.  *See, e.g.*, *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990) ("To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction."); *Howlett v. Rose,* 496 U.S. 356, 368 (1990) ("In every case in which they were not expressly excluded by the future acts of the national legislature, [state courts] will of course take cognizance of the causes to which those acts may give birth.") (quoting The Federalist No. 82, p. 132 (E. Bourne ed. 1947)); *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) (discussing "the axiom that, under our federal system, the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause"); *see also Testa v. Katt*, 330 U.S. 386, 394 (1946); *McKnett v. St. Louis & S.F. Ry. Co.*, 292 U.S. 230, 233 (1934).  Thus, ordinarily "state courts share responsibility for the application and enforcement of federal law."  *Howlett*, 496 U.S. at 372-73.

In this case, however, Plaintiffs do not purport to bring a federal claim based on the PREP Act or allege a claim that "is, in essence, based on federal law," but avoid mentioning the federal statute through artful pleading.  *Sullivan*, 484 F.3d at 271.  Plaintiffs do not assert causes of action for willful misconduct.  The Complaint asserts the following causes of action: medical malpractice in violation of New York Public Health Law § 2803-c, negligent hiring, training, supervision, and retention, negligence, and wrongful death in violation of New York Estates, Powers and Trusts Law § 5-4.1.  Each of those claims is created by the law of New York and

none requires proof of willful misconduct.  They involve the failure to comply with "the customs and practices of the medical profession," Compl. ¶ 34, or the "accepted standards of medical care," *id.* ¶¶ 35, 36,[12] "negligence, gross negligence, and/or reckless indifference, without any culpable conduct on the part of Plaintiff[s]," *id.* ¶ 37.  Plaintiffs' claim under New York Estates, Powers and Trusts Law § 5-4.1, which permits recovery for "a wrongful act, neglect or default which caused the decedent's death," N.Y. Est. Powers & Trusts L. § 5-4.1, is based on the foregoing negligence and does not require proof of willful misconduct.  *See* Compl. ¶¶ 46-48; *see, e,g.*, *Dershowitz v. United States*, 2015 WL 1573321, at *23-24 (S.D.N.Y. Apr. 8, 2015) (N.Y. Est. Powers & Trusts L. § 5-4.1 action based on negligence); *Cerbelli v. City of New York*, 600 F. Supp. 2d 405, 429 (E.D.N.Y. 2009) (N.Y. Est. Powers & Trusts L. § 5-4.1 action based on negligence and medical malpractice).  "This is not an instance of 'artful pleading' in which the Plaintiff is disguising what is essentially a federal claim in state law clothing; it is a garden variety negligence case, as to which Defendant might (or might not) have a defense."  *Garcia v. N.Y.C. Health and Hosps. Corp.*, 2021 WL 1317178, at *1 (S.D.N.Y. Apr. 8, 2021).

The Complaint does contain an allegation that "Defendants['] reckless and intentional conduct must be punished as reprehensible and prevented in the future by the award of punitive damages" under the state statutory medical malpractice claim, Compl. ¶ 38, as well as a request for punitive damages as to all claims.  But the exclusive jurisdiction in the PREP Act is only for "causes of action" based on willful misconduct, and there is no separate cause of action for punitive damages under New York law.  *See Krulewich v. Covidien, LP*, 2020 WL 5995103, at

---

[12] New York Public Health Law § 2803-c provides, in relevant part: Every patient shall have the right to receive adequate and appropriate medical care, to be fully informed of his or her medical condition and proposed treatment unless medically contraindicated, and to refuse medication and treatment after being fully informed of and understanding the consequences of such actions." N.Y. Pub. Heath L. § 2803-c(e).

*10 (S.D.N.Y. Oct. 9, 2020) ("A punitive damages claim is derivative.") (collecting cases); *Green v. Covidien LP*, 2019 WL 4142480, at *10 (S.D.N.Y. Aug. 30, 2019) ("While plaintiff is entitled to include in her prayer for relief a request that she be awarded punitive damages in the event she proves the requisite degree of culpability on her causes of action . . . a claim for punitive damages may not be maintained as a separate cause of action.") (quoting *La Porta v. Alacra, Inc.*, 38 N.Y.S.3d 20, 23 (1st Dep't 2016)); *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 634 N.E.2d 940, 945 (N.Y. 1994) ("A demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action such a fraud."). "[T]he federal statute [therefore does not] provid[e] 'the exclusive cause of action' for the asserted state-law claim." *Sullivan*, 424 F.3d at 276 (quoting *Beneficial Nat'l Bank*, 539 U.S. at 9).

Second, the Court gives no deference to any determination by the HHS Secretary in the Fourth Amended Declaration as to whether the PREP Act has a "completely preemptive" effect. The Supreme Court has instructed that an agency's interpretation of a statute is entitled to *Chevron* deference when "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001); *see Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018) ("[D]eference is not due unless a 'court, employing traditional tools of statutory construction,' is left with an unresolved ambiguity.") (quoting *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)); *Dupervil*, 2021 WL 355137, at *11 n.3 (declining to give *Chevron* deference to HHS Secretary's declarations). "Otherwise, the interpretation is 'entitled to respect'

but only to the extent it has the 'power to persuade.'" *Gonzales v. Oregon*, 546 U.S. 243, 256 (2006) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Congress establishes the jurisdiction of the federal courts.  U.S. Const. Art. III, § 1.  Only Congress may establish a federal cause of action.  *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("[L]ike substantive federal law itself, private rights of action to enforce federal law must be made by Congress").  Consequently, a federal agency may not, by regulation, establish a federal cause of action.  That is, at least in part, because the jurisdiction of the federal courts is set by Congress and not by a cabinet secretary or administrative agency.  U.S. Const. Art.  III, § 1; *see Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) ("Only Congress may determine a lower federal court's subject-matter jurisdiction."); *Kline v. Burke Const. Co.*, 260 U.S. 226, 234 (1922) (federal courts derive their "jurisdiction wholly from the authority of Congress"); *see also La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986) ("An agency may not confer power upon itself.  To permit an agency to expand its power in the face of a congressional limitation on its jurisdiction would be to grant to the agency power to override Congress.  This we are both unwilling and unable to do.").

 It follows therefore that whatever the HHS Secretary believed the respective bounds of the state and federal courts to be, the Court must look to the language of Congress, and not that of the declarations, to determine the answers to those questions.  *See Kucana v. Holder*, 558 U.S. 233, 237, 252 (2010) ("Congress ensured that it, and only it, would limit the federal courts' jurisdiction" and thus "[s]eparation-of-powers concerns . . . caution us against reading legislation, absent clear statement, to place in executive hands authority to remove cases from the Judiciary's domain."); *Zhong v. U.S. Dep't of Just.*, 489 F.3d 126, 132 (2d Cir. 2007) (Calabresi, J., concurring in denial of rehearing en banc) (stating that "one may certainly doubt" "whether an

27

administrative agency can either confer jurisdiction on courts or deprive courts of it. . . in the absence of any express authorization to that effect by Congress"); *Carlyle Towers Condo. Ass'n, Inc. v. F.D.I.C.*, 170 F.3d 301, 310 (2d Cir. 1999) ("[I]t is 'axiomatic' that agencies can neither grant nor curtail federal court jurisdiction.") (quoting *Miller v. FCC*, 66 F.3d 1140, 1144 (11th Cir. 1995)); *Wirtgen Am., Inc. v. United States*, 437 F. Supp. 3d 1302, 1310 (Ct. Int'l Trade 2020) ("[N]o agency regulation may enlarge or limit the jurisdiction Congress grants to this or any Article III court."); *see also La. Pub. Serv. Comm'n*, 476 U.S. at 374 ("[W]e simply cannot accept an argument that [an agency] may nevertheless take action which it thinks will best effectuate a federal policy."); *N.R.D.C. v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 108 (2d Cir. 2018) ("It is well settled that an agency may only act within the authority granted to it by statute.  This principle is a recognition of the nature of an administrative agency as a creature of statute, having no constitutional or common law existence or authority, but only those authorities conferred upon it by Congress.") (internal citations and quotation marks omitted).

The HHS Secretary relied on *Grable* in stating that "there are substantial federal legal and policy issues, and substantial federal legal and policy interests . . . in having a uniform interpretation of the PREP Act" and that he had "the authority to strike the appropriate Federal-state balance with respect to particular Covered Countermeasures through PREP Act declarations."  Fourth Amended Declaration, 85 Fed. Reg. at 79,197-98.  The reference to uniformity is insufficient to justify complete preemption and is foreclosed by *Metropolitan Life* as well as by *Franchise Tax Board* and *Caterpillar*.  In those cases, no less than in this case, there was value in a uniform interpretation of federal jurisdiction.  In *Metropolitan Life*, the Supreme Court recognized that "the policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if

ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Metro. Life*, 481 U.S. at 64-65 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)).  Nonetheless, the Supreme Court suggested that the need for uniformity would not be enough to support complete preemption.  State courts are equally bound by the Supremacy Clause to apply federal law as "the supreme law of the land . . . anything in the Constitution or laws of any State to the contrary notwithstanding," U.S. Const. Art. VI, § 2, and they are as responsible and presumptively as competent as any of the 94 federal district courts scattered throughout the country to hold that state law is displaced when its application would undermine a federal scheme.

     *Grable* also does not support federal question and removal jurisdiction in this case.  The question in *Grable* was whether an action to quiet title brought in state court was removable to federal court on the basis that the claim of title depended on the interpretation of the notice provision of the Internal Revenue Code.  The Supreme Court held that the claim was removable because it "necessarily raise[d] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable*, 545 U.S. at 314.  In so holding, the Supreme Court emphasized that, in order for plaintiff to prevail on its state law cause of action, it would have to specify the facts establishing the superiority of its claim, and it found that plaintiff had "premised its superior claim on a failure by the IRS to give it adequate notice, as defined by federal law." *Id.* at 314-15.  Thus, the federal question "was an essential element of its quiet title claim."  *Id.* at 315.  Moreover, the Supreme Court stressed, "because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over

federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." *Id.*

      This case could not be more different from *Grable*.  The immunity question is not an element of Plaintiffs' state-law causes of action.  The existence of immunity is ordinarily a defense that can be raised or waived by a defendant.  *See, e.g.*, *Donohue v. Cuomo*, 980 F.3d 53, 77 (2d Cir. 2020) ("The Eleventh Amendment 'does not automatically destroy original jurisdiction,' but rather 'grants the State a legal power to assert a sovereign immunity defense should it choose to do so.  The State can waive the defense' and a court need not 'raise the defect on its own.'") (quoting *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998)); *Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016) ("Qualified immunity is an affirmative defense that may be waived if . . . the defendants failed to move for summary judgment on this defense, even if . . . the defendants asserted the defense in their answer.").  Plaintiffs need not prove that Defendants here are not immune in order to prevail.  The *Grable* court did not purport to limit—indeed, it did not even discuss—the long line of cases that preceded it, which held preemption is a defense that does not present a federal question.  Nor has *Grable* been read to limit those cases.  *See, e.g.*, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) ("The question is whether at least one federal aspect of [the] complaint is a logically separate claim, rather than merely a separate theory that is part of the same claim as a state-law theory" and holding that claim raised a federal issue under *Grable*, as "apparent from the face of the complaint, without reference to any anticipated defense"); *Glatzer v. Bear Stearns & Co.*, 201 F. App'x 98, 99 (2d Cir. 2006) (directing district court to remand where "face of [the] well pleaded complaint" alleged "only state tort and contract claims" and did not "necessarily depend on a disputed and substantial issue of federal law" under *Grable*); *see also Empire Healthchoice Assur., Inc. v. McVeigh*, 547

U.S. 677, 700 (2006) (distinguishing *Grable* as focused on "the action of a federal agency (IRS) and its compatibility with a federal statute" that raised a "substantial" federal question where "resolution was both dispositive of the case and would be controlling in numerous other cases"). Finally, as discussed above, accepting Defendants' argument that the claim here—which alleges run-of-the-mill state-law causes of action—is removable would dramatically alter the federal-state division of labor.[13]

The Court's conclusion is reinforced by several additional considerations.

First, Congress did not intend the PREP Act "to preempt entirely every state cause of action relating to" medical malpractice or negligence by a covered person administering a covered countermeasure, *Franchise Tax Bd.*, 463 U.S. at 25, and there may be "many reasons completely unrelated to [state negligence and medical malpractice] provisions and purposes why [a plaintiff] may or may not be entitled to the relief it seeks," *id.* at 26. Plaintiffs' claims may fail, for example, if they are unable to prove that Defendants' care fell below the accepted standards of medical care or that any negligence by Defendants was not the cause of Rosa Shapnik's death. Those claims might prevail, notwithstanding any conclusion that Hebrew Home and the other defendants are covered persons, if, for example, Defendants failed to follow

---

[13] This conclusion is not changed by either the October 23, 2020 Advisory or the more recently issued January 8, 2021 advisory opinion ("January 8, 2021 Advisory"), which opined that "the PREP Act 'is a complete preemption statute' and that the Secretary's determination that the Act implicates a 'substantial' federal question 'provides the underlying basis for invoking the Grable doctrine.'" *Dupervil*, 2021 WL 355137, at *10. Both of those advisory opinions state that they are "not a final agency action or a final order" and do "not have the force or effect of law." "[E]ven assuming that Congress intended to delegate authority to the Secretary and HHS's [OGC] 'generally to make rules carrying the force of law,' the [OGC] interpretation relied upon by Defendants here explicitly was not 'promulgated in the exercise of that authority' and is not entitled to *Chevron* deference." *Id.* (citing *Mead*, 533 U.S. at 226-27). Nor can the HHS Secretary on its own decide whether to "grant []or curtail federal court jurisdiction." *Carlyle Towers Condo. Ass'n*, 170 F.3d at 310.

the public health guidance of the Authority Having Jurisdiction.  Each of those issues remains to

be tried, but the fact that Defendants might not have immunity, even if they are covered persons

under the statute and declarations, provides further support for the Court's decision.

Second, the very breadth of Defendants' argument demonstrates why their position

cannot be correct.  Citing the March 17, 2020 Declaration, Defendants argue that as long as a

plaintiff suffered an injury at the hands of a person charged with administering a covered

countermeasure, without regard to whether there was a "direct relationship" between the injury

and the use of a covered countermeasure, the action is preempted.  *See* Dkt. No. 19 at 10-11.  As

long as the covered person offered a site for the distribution of a covered countermeasure and

this circumstance provided the occasion for the person's injury, Defendants' argument goes, the

state-law claim is preempted.  *Id.*  Every slip and fall case, every negligence case against any

nursing home, hospital, school, or community center involved with the administration of a

COVID-19 test or a COVID-19 vaccination, under their reading, would both be preempted and

removable to federal court.  The federal courts have long been hesitant to find that Congress

intended to displace state law when to do so would deprive the states of their authority "in fields

of traditional state regulation."  *N.Y.S. Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins.

Co.*, 514 U.S. 645, 655 (1995) ("[W]e have never assumed lightly that Congress has derogated

state regulation, but instead have addressed claims of pre-emption with the starting presumption

that Congress does not intend to supplant state law.  Indeed, in cases like this one, where federal

law is said to bar state action in fields of traditional state regulation, we have worked on the

assumption that the historic police powers of the States were not to be superseded by the Federal

Act unless that was the clear and manifest purpose of Congress.") (internal citations and

quotation marks omitted); *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136

S.Ct. 1562, 1567-68 (2016) (describing the Supreme Court's "practice of reading jurisdictional laws, so long as consistent with their language, to respect the traditional role of state courts in our federal system and to establish clear and administrable rules").  In a case such as this, where the impact of a finding of complete preemption would be not only to foreclose any claim against a broad number of defendants that are traditionally entertained by state courts, but also to divest the state courts of any power to even hear those cases and divert them all to federal court, the Court is even more reluctant to reach such a conclusion in the absence of language reflecting a clear intent to the contrary.

The Court thus joins the "growing consensus among courts across the country that state-law claims of negligence and wrongful death brought against a nursing home for failure to protect against the spread of COVID-19, like those that Plaintiff[s] allege[], are not properly characterized as federal-law claims under the PREP Act."  *Dupervil*, 2021 WL 355137, at *12 (E.D.N.Y. Feb. 2, 2021) (collecting cases); *see Padilla v. Brookfield Healthcare Ctr.*, 2021 WL 1549689, at *4 (C.D. Cal. Apr. 19, 2021) ("Nearly every other federal court addressing the issue of complete preemption has found that the PREP Act is not a statute with complete preemptive effect."); *see also Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, 2021 WL 1561306, at *8 (M.D. Tenn. Apr. 21, 2021); *Hopman v. Sunrise Villa Culver City*, 2021 WL 1529964, at *5 (C.D. Cal. Apr. 16, 2021); *Perez v. Se. SNF LLC*, 2021 WL 1381232, at *2 (W.D. Tex. Apr. 12, 2021); *Garcia*, 2021 WL 1317178, at *1; *Schuster v. Percheron Healthcare, Inc.*, 493 F. Supp. 3d 533 (N.D. Tex. 2021); *Est. of Cowan v. LP Columbia KY, LLC*, 2021 WL 1225965, at *4

(W.D. Ky. Mar. 31, 2021); *Est. of Jones v. St. Jude Operating Co.*, LLC, 2021 WL 900672, at *4-5 (D. Or. Feb. 16, 2021).[14]

## CONCLUSION

As the Court lacks subject matter jurisdiction, Defendants' motion for summary judgment is DENIED and the case is REMANDED to state court.  Dkt. No. 8.

The Clerk of Court is respectfully directed to terminate all motions and deadlines, to close the case, and to transfer the case back to the Supreme Court of the State of New York, Bronx County.


SO ORDERED.

Dated: April 26, 2021
New York, New York                                            LEWIS J. LIMAN
                                                        United States District Judge

---

[14] *Garcia v. Welltower OpCo Grp. LLC*, 2021 WL 492581, at *14-17 (C.D. Cal. Feb. 10, 2021) is the only case of which the Court is aware that has held the PREP Act is a complete preemption statute.  But the *Garcia* court "paid significant deference" to the January 8, 2021 Advisory and without first considering its persuasiveness.  *Padilla*, 2021 WL 1549689, at *4 (citing *Garcia* 2021 WL 492581, at *6-7); *see Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (agency "interpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the 'power to persuade'"); *Catskill Mountains Chapter of Trout Unlimited, Inc. v. E.P.A.*, 846 F.3d 492, 509 (2d Cir. 2017) (whether an interpretation has the "'power to persuade,' . . . depends on, *inter alia*, 'the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements'") (quoting *Skidmore*, 323 U.S. at 140).  This Court declines, as other courts have, to pay such deference to the January 8, 2021 Advisory because it lacks the power to persuade as its "characterization of the complete preemption doctrine is contrary to law," *Smith v. Colonial Care Ctr., Inc.*, 2021 WL 1087284, at *6 (C.D. Cal. Mar. 19, 2021), and because it seeks to improperly to "grant []or curtail federal court jurisdiction" without express statement from Congress, *Carlyle Towers Condo. Ass'n*, 170 F.3d at 310; *see also Kucana*, 558 U.S. at 237.